# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOE FORD et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. CIV-19-925-G |
| LIBERTY MUTUAL INSURANCE COMPANY, a foreign corporation, et al., | ) ) ) ) ) |
| Defendants. | ) |

## ORDER

Now before the Court is Plaintiffs' Motion to Remand (Doc. No. 12). Defendant Liberty Mutual Insurance Company has responded in opposition to the Motion (Doc. No. 16), and Plaintiffs have replied (Doc. No. 17).

*I. Background*

This lawsuit involves claims by Plaintiffs Joe and Katie Ford ("Plaintiffs") against their homeowners' insurer, Liberty Mutual Insurance Company ("Liberty Mutual"), and its agent Scott Diehl ("Diehl"). *See generally* Pet. (Doc. No. 1-2).[1] Plaintiffs allege that they engaged Diehl to procure a "full replacement cost policy for their home, personal property and other structures" located in Shawnee, Oklahoma. *Id.* ¶¶ 6, 20. Plaintiffs "informed Diehl of the property to be insured and provided all details that Diehl requested

---

[1] On November 5, 2019, Plaintiffs filed an Amended Complaint (Doc. No. 10). However, the operative pleading for purposes of Plaintiffs' Motion to Remand is the petition originally filed in state court. *See Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1133 (10th Cir. 2014) (explaining that "the propriety of removal is judged on the complaint as it stands at the time of the removal" (internal quotation marks omitted)).

about the property." *Id.* ¶ 20. Diehl "represented that he could obtain the insurance coverage requested." *Id.*

Diehl thereafter procured, and Liberty Mutual issued, homeowners' policy No. H37-298-241862-40 7 8 (the "Policy"). *Id.* ¶ 8. Diehl "represent[ed] to Plaintiffs that the [P]olicy would fully replace their home in the event of a loss, knowing such statement was untrue." *Id.* ¶ 22; *see also id.* ¶ 20. Diehl's representations induced Plaintiffs to purchase and renew the Policy. *Id.* ¶ 22.

Unbeknownst to Plaintiffs, the Policy excluded coverage for losses caused by "water damage." Pls.' Mot. (Doc. No. 12) at 1-2. Diehl did not inform Plaintiffs about the Policy's water-damage exclusion; nor did he advise them "about the option to purchase a 'water backup' endorsement" that would have supplied coverage in the event of a sewer backup. *Id.* at 2.

On or about February 20, 2018, the City of Shawnee experienced a sewer backup, which resulted in damage to Plaintiffs' home and other property covered under the Policy. *See* Pet. ¶ 10. Plaintiffs submitted a claim to Liberty Mutual, which Liberty Mutual denied pursuant to the Policy's water-damage exclusion. *Id.* ¶¶ 10, 14; *see also* Pls.' Mot. at 1-2.

On September 12, 2019, Plaintiffs filed suit against Diehl and Liberty Mutual in the District Court of Pottawatomie County, Oklahoma, seeking reformation of the Policy and other damages. *See Ford v. Liberty Mut. Ins. Co.*, No. CJ-2019-374 (Pottawatomie Cty.).[2] On October 7, 2019, Liberty Mutual removed the action to this Court on the basis of

---

[2] Docket publicly available through http://www.oscn.net.

diversity jurisdiction, contending that Defendant Diehl—the only nondiverse party—had been fraudulently joined. *See* Notice of Removal (Doc. No. 1) ¶ 6. Plaintiffs timely moved to remand.

II.     *Diversity Jurisdiction Under 28 U.S.C. § 1332(a)*

Jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity among the parties—i.e., the citizenship of all defendants must be different from the citizenship of all plaintiffs. *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008). The party invoking diversity jurisdiction—here, Liberty Mutual—has the "burden of proving [diversity jurisdiction] by a preponderance of the evidence." *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).

In this case, the citizenship of the named parties is undisputed. Plaintiffs are citizens of Oklahoma, Defendant Liberty Mutual is a noncitizen of Oklahoma, and Defendant Diehl is a citizen of Oklahoma. *See* Pet. ¶¶ 1-3; Notice of Removal ¶¶ 5-6. The only dispute, for purposes of Plaintiffs' Motion, is whether Defendant Diehl has been fraudulently joined.

The doctrine of fraudulent joinder permits a federal court to disregard the citizenship of a nondiverse defendant against whom the plaintiff has not or cannot assert a colorable claim for relief. *See Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013). "To establish fraudulent joinder, the removing party must demonstrate either: 1) actual fraud in the pleading of jurisdictional facts, or 2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (alterations and internal quotation marks omitted); *see also Hernandez v. Liberty Ins. Corp.*, 73 F. Supp. 3d 1332, 1336 (W.D. Okla. 2014).

3

Where, as here, removal is based on the second prong, the removing party must demonstrate "[t]he non-liability of the defendant[] alleged to be fraudulently joined . . . with 'complete certainty.'" *Hernandez*, 73 F. Supp. 3d at 1336. Any uncertainty regarding the viability of the claims asserted against the nondiverse party—including "disputed questions of fact" and "ambiguities in the controlling law"— must be resolved in favor of remand. *Montano v. Allstate Indem.*, No. 99-2225, 2000 WL 525592, at *2 (10th Cir. Apr. 14, 2000) (internal quotation marks omitted); *accord Dutcher*, 733 F.3d at 988 (discussing the removing party's "heavy burden").

## III. Discussion

Plaintiffs assert claims against Diehl for constructive fraud and failure to procure insurance. *See* Pet. ¶¶ 20-24. To establish a claim for constructive fraud under Oklahoma law, Plaintiffs must plead and eventually prove that: (1) Diehl owed them "duty of full disclosure"; (2) Diehl "misstated a fact or failed to disclose a fact" to Plaintiffs; (3) Diehl's "misstatement or omission was material"; (4) Plaintiffs "relied on [Diehl's] material misstatement or omission"; and (5) Plaintiffs "suffered damages as a result of [Diehl's] material misstatement or omission." *Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1180-81 (10th Cir. 2008) (internal quotation marks omitted).

Liberty Mutual argues that Plaintiffs cannot, as a matter of law, satisfy the duty element of their constructive-fraud claim. *See* Def.'s Resp. (Doc. No. 16) at 11. But the cases cited in support of this argument merely hold that an insurance agent has no affirmative duty to advise an insured regarding his or her insurance needs or to explain the coverage afforded under a policy. *See Cosper v. Farmers Ins. Co.*, 309 P.3d 147, 149

4

(Okla. Civ. App. 2013) (holding that insurance agent had no duty "to notify [insureds] that the coverage they accepted might exceed the amount needed to replace their home in the event of a total loss"); *Mueggenborg v. Ellis*, 55 P.3d 452, 454 (Okla. Civ. App. 2002) (holding that insurance agent had no duty to advise insured "as to the availability of higher limits of UM coverage"); *cf. Silver v. Slusher*, 770 P.2d 878, 879, 883 (Okla. 1988) (holding that insurer had no "affirmative duty . . . to provide an explanation of uninsured motorist coverage . . . to the named insureds").

In this case, Plaintiffs allege that Diehl undertook to advise them regarding the scope of coverage under the Policy and that this voluntary undertaking created a duty to "disclose any exclusions or limitations of the [P]olicy that would limit or restrict coverage in the event of either a partial or total loss." Pet. ¶ 21. Oklahoma law recognizes that a duty to speak may "arise, even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to plaintiff about a particular subject matter." *Specialty Beverages*, 537 F.3d at 1180 (emphasis and internal quotation marks omitted). In other words, "[a] duty to speak may arise from partial disclosure, the speaker being under a duty to say nothing or to tell the whole truth." *Uptegraft v. Dome Petroleum Corp.*, 764 P.2d 1350, 1353 (Okla. 1988); *see also* Okla. Uniform Jury Instr. Civil 18.5 ("[A] person has a duty to disclose a material fact if it is known to [him/her] and . . . [he/she] states other facts which are true but which [he/she] knows will create a false impression . . . in the mind of the other person if the material fact is not disclosed . . . ." (second and fourth alterations in original)). Because Plaintiffs allege that Diehl volunteered information about the coverage afforded under the Policy—whether on his own initiative or in response to Plaintiffs' inquiries—the

5

Court cannot say with "complete certainty" that Diehl had no duty to notify Plaintiffs of the water-damage exclusion. *Hernandez*, 73 F. Supp. 3d at 1336.

Liberty Mutual further contends that Plaintiffs cannot prevail on their constructive-fraud claim because they could have discovered the water-damage exclusion by reading the Policy for themselves. *See* Def.'s Resp. at 12. In support of this argument, Liberty Mutual cites *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272 (N.D. Okla. 2006), which involved claims for fraud and misrepresentation based on statements made during an insurance sales pitch that were "squarely contradict[ed]" by the "clear and unambiguous language" of the written life-insurance policy subsequently issued to the plaintiffs. *Id.* at 1281. Invoking the parol evidence rule and citing the policy's "comprehensive integration clause," the court held that the plaintiffs could not maintain a claim for fraud or misrepresentation against the nondiverse defendants based on statements made during "oral discussions and pre-contract negotiations." *Id.*

While at first glance *Slover* might appear to preclude Plaintiffs' constructive-fraud claim against Diehl, the case is distinguishable on its facts. Specifically, the parol evidence rule barred the *Slover* plaintiffs' constructive-fraud claim against the nondiverse defendants because those defendants "did not participate in the sale of [the] policy." *Id.* at 1282. The Court acknowledged, however, that "an allegation of fraud at the point of sale [can] overcome the parol evidence rule." *Id.* Because Plaintiffs in this case allege Diehl personally misrepresented the Policy terms at the point of sale, the Court is unable to conclude with "complete certainty" that Plaintiffs' constructive-fraud claim is barred by the parol evidence rule. *Hernandez*, 73 F. Supp. 3d at 1336.

Plaintiffs, for their part, cite *Gentry v. American Motorist Insurance Co.*, 867 P.2d 468, 470 (Okla. 1994). *See* Pls.' Mot. at 9-10. In that case, the Oklahoma Supreme Court held that the plaintiff, who was "bargaining for a policy insuring against theft," had a right "to know that certain types of theft were excluded" from the policy being sold to him and, thus, the insurer "through its agent had a duty to inform [the plaintiff] of exclusions at the time of the negotiations." *Id.* at 472. The Court went on to state: "It is no defense to the insurance company that [the plaintiff] failed to read his policy when he received it thirty to sixty days after it was issued." *Id.*

Liberty Mutual argues that *Gentry* is inapplicable because it involved a claim "against the insurer alone, not the agent who allegedly made the misrepresentation." Def.'s Resp. at 14 (emphasis omitted). However, Liberty Mutual supplies no authority to support the distinction it urges the Court to draw, and the Court is otherwise unable to say with "complete certainty" that Plaintiffs' constructive-fraud claim against Diehl is not cognizable under Oklahoma law. *Hernandez*, 73 F. Supp. 3d at 1336.

In sum, the Court concludes that Liberty Mutual has not carried its burden to show with "complete certainty" that Plaintiffs cannot prevail on their constructive-fraud claim against Diehl. At most, Liberty Mutual has shown "ambiguities in the controlling law," which must necessarily be resolved in favor of remand. *Montano*, 2000 WL 525592 at *2 (internal quotation marks omitted). Because the Court concludes that Liberty Mutual has not carried its burden with respect to Plaintiffs' constructive-fraud claim, it is unnecessary to examine whether Diehl could be liable to Plaintiffs under a failure-to-procure theory. *See Yeaman v. Hillerich & Bradsby Co.*, No. CIV-09-981-F, 2009 WL 10702127, at *2 (W.D.

Okla. Dec. 21, 2009) ("Remand is required if any claim against the non-diverse defendant is possibly viable.").

## CONCLUSION

For the reasons set forth above, the Court:

(1) concludes that there is not complete diversity of parties as required to establish jurisdiction under 28 U.S.C. § 1332(a) and, therefore, GRANTS Plaintiffs' Motion to Remand (Doc. No. 12);

(2) REMANDS this matter to the District Court for Pottawatomie County, Oklahoma; and

(3) DIRECTS the Clerk of this Court to send a certified copy of this Order to the Clerk of the state court to which this matter is remanded.

IT IS SO ORDERED this 16th day of January, 2020.

_____
CHARLES B. GOODWIN
United States District Judge